IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**KENNETH MARK POHLMANN,**

    **Plaintiff,**

vs.                                    Case No. 4:23-cv-00019-TKW-MAF

**LISA NOLES, ARPN,**
**Et al.,**

    **Defendants,**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Kenneth Mark Pohlmann, an inmate proceeding *pro se* and *in forma pauperis*, initiated this civil rights action pursuant to 42 U.S.C. § 1983 and filed an amended complaint. ECF No. 5. Defendants Lisa Noles, APRN and Dr. Alvia Varona waived service and filed a motion to dismiss. See ECF Nos. 10, 11. Defendants Amelia Hill and Shelley Bearden filed a separate motion to dismiss.[1] ECF No. 20. Pohlmann filed his responses to both motions. ECF Nos. 17, 22. After careful review, the motions to dismiss should

---

[1] The Clerk is directed to correct the docket to reflect the full names of Amelia Hill and Shelley Bearden. Currently, the docket shows Defendants as "A Hill and S Bearden."

General counsel for the Florida Department of Corrections refused to accept service on behalf of Hill and Bearden. ECF Nos. 19, p. 1 and 19-1, p. 1. Nothing was filed in the case confirming Hill and Bearden were served; nonetheless, they are represented by counsel who filed a motion to dismiss on their behalf. Hill and Bearden are represented by Lauren Strickland; Noles and Varona are represented by Carlos Garcia.

be denied, in part, and granted, in part; and the case should proceed against all Defendants.

**I.  Pohlmann's Amended Complaint, ECF No. 5.**

Pohlmann alleges Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. ECF No. 5. Pohlmann sued the warden and assistant warden of Madison Correctional Institution (C.I.), Defendants Hill and Bearden, respectively. Id., p. 4. Pohlmann also sued two medical providers at Madison C.I., Nurse Noles and Dr. Varona. Id., pp. 1-3. All Defendants are sued in their individual- and official capacities. Id., pp. 2-4.

Pohlmann claims he suffers from persistent abdominal pain, excessive bowel movements, bloating, gas, diarrhea, and constipation, since his arrival at Madison C.I. on May 10, 2021. Id., pp. 6-18. According to Pohlmann, the pain is "unbearable" and signals a need for a doctor or specialist to get a complete diagnosis. Id., pp. 6-7. In Pohlmann's view, his symptoms suggest irritable bowel syndrome (IBS). Id., p. 7. Pohlmann claims this condition causes anxiety, depression, and humiliation; and it could be controlled with Imodium or other medications. Id.

Pohlmann claims Warden Hill is responsible for the well-being of all inmates and is obligated to take some form of action or inform authorities

once prison officials are aware of an inmate's need for medical care. Id., pp. 13-14. Pohlmann alleges that on or about December 15, 2021, the inspector general emailed Warden Hill about Pohlmann's medical condition. Id., p. 14. Warden Hill then directed Assistant Warden Cox[2] to investigate Pohlmann's allegations. Id., p. 15. Cox confirmed Pohlmann's condition with medical staff. Id. Accordingly, Cox issued a directive to staff authorizing Pohlmann to access a toilet at any time. Id. Pohlmann claims that Warden Hill had an obligation to take further action but failed to do so. Id.

Pohlmann alleges Assistant Warden Bearden learned of his condition beginning October 25, 2021, though his grievances; Bearden approved most of the grievances. Id., p. 16. However, Pohlmann claims Bearden failed to alert the authorities and medical staff about the delay or denial of his medical care. Id., pp. 16-17. In short, Pohlmann suggests Bearden was obligated to do more than approve grievances. Id., p. 18.

Pohlmann admits he received treatment and diagnostic testing for his condition during 2021 and 2022 including x-rays, a sonogram, blood and stool tests, and a colonoscopy. Id., pp. 8-11. Dr. Varona is the supervisor for Nurse Noles and knew about Pohlmann's condition because Dr. Varona is the one who approved the lab tests and colonoscopy in March 2022. Id.,

---

[2] Cox is not a party to this case.

Case No. 4:23-cv-00019-TKW-MAF

p. 10. The test results "came back negative." Id., p. 11. Pohlmann alleges Dr. Varona did not ordered any further testing or treatment. Id. Pohlmann claims his suffering could be alleviated if Dr. Varona authorized Nurse Noles to prescribe him medications. Id., p. 13. Pohlmann claims Nurse Noles provided him with 10 Imodium pills on March 22, 2022. Id., p. 18.

Pohlmann alleges he received no further treatment, testing, or medications after March 22, 2022, but then admits he met with Nurse Noles on June 27, 2022. Id., pp. 7-8, 11. Nurse Noles referred Pohlmann to Mrs. Siplon for his anxiety. Id., p. 9. Mrs. Siplon opined that Pohlmann's anxiety was a direct result of his gastrointestinal issues and promised to confer with Nurse Noles. Id. On September 14, 2022, Nurse Booth advised Pohlmann he was scheduled for medical care with the prison's "chronic clinics." Id. Pohlmann claims the appointments with the "chronic clinics" were to be scheduled sometime in the future, but Dr. Varona refused to ensure he received these treatments. Id., p. 10. Pohlmann has not been scheduled for "chronic clinics."

Pohlmann seeks injunctive relief but does not indicate what type of relief is appropriate. Id., p. 19. He also seeks nominal damages; $2,000,000 for "needless" pain and suffering; and $10,000,000 in punitive damages. Id.

## II. Standard of Review

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Although legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. Id. at 679. Detailed factual allegations are not required, but the complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." Twombly, 550 U.S. at 555 (citation omitted). The factual allegations must adequately "raise a right to relief above the speculative level." Id. (citations omitted). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by* Mohamad v. Palestinian Auth., 566 U.S. 449 (2012).

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (citing SEC v. ESM Grp., Inc., 835 F.2d 270, 272 (11th Cir. 1988)).

### III. The Motion to Dismiss Filed by Noles and Varona, ECF No. 11.

Noles and Varona filed a motion to dismiss without any exhibits in support. They argue dismissal is proper because Pohlmann fails to state an Eighth Amendment claim. ECF No. 11, p. 1. They contend Pohlmann alleges a misdiagnosis claim, at best. Id., p. 4. Noles and Varona maintain that Pohlmann received medical care including extensive testing; therefore, the allegations that they should have provided additional treatment or care is insufficient to support a Section 1983 claim. Id., pp. 6-7. Negligence or medical malpractice claims are not cognizable under Section 1983. Id., p. 7.

Noles and Varona also contend that Johnson did not exhaust his administrative remedies, but they provide no support for that position. Id., p. 1. Defendants bear the burden of proving a failure to exhaust administrative remedies.

### IV. The Motion to Dismiss filed by Hill and Bearden, ECF No. 20.

Hill and Bearden also filed a motion to dismiss without any supporting

exhibits. They argue Pohlmann failed to allege sufficient facts to state an Eighth Amendment claim or to show he is entitled to injunctive relief; therefore, they are entitled to qualified immunity. ECF No. 20, pp. 1-2.

Hill and Bearden maintain that Pohlmann failed to allege that they knowingly or recklessly disregarded his serious medical needs. Id., p. 3. Bearden only became aware of Pohlmann's alleged IBS when he received Pohlmann's informal grievance on October 25, 2021; Warden Hill learned about it later when the inspector general sent an email to her on December 15, 2021, detailing Pohlmann's complaints. Id., p. 4. Hill and Bearden emphasize Pohlmann's admissions that he received significant medical care (x-rays, sonograms, various lab tests, and a colonoscopy) once Hill and Bearden were notified. Id. They argue that because all tests came back negative, the IBS Pohlmann alleges is undiagnosed and, thus, does not qualify as a serious medical condition. Id., pp. 4-5.

Even if Pohlmann's illness was a serious medical condition, Hill and Bearden assert they did not ignore the risks to Pohlmann's health, investigated his medical needs, and spoke with medical staff who then proceeded to treat his condition. Id., pp. 5. Hill and Bearden deny the allegation they ignored Pohlmann's condition. They posit that Pohlmann simply disagrees with the medical opinions or alleges mere negligence,

which is insufficient to sustain an Eighth Amendment claim. Id.

Hill and Bearden maintain Pohlmann is not entitled to injunctive relief because he does not establish is constitutional rights were violated and fails to show irreparable harm will occur. Id., p. 6. They further maintain Pohlmann fails to specify the type of relief he seeks and "any alleged harm is speculative." Id. Finally, Hill and Bearden assert they are entitled to qualified immunity; and no evil intent exists to support a punitive damages award. Id., pp. 7-9.

## V. Discussion

### A. Pohlmann's Responses to the Motions to Dismiss

Pohlmann maintains that Defendants' argument that he failed to exhaust his administrative remedies is meritless because they did not explain how he failed to properly exhaust; he is not required to plead exhaustion. ECF No. 17, p. 4-6.

Pohlmann also argues that his complaint provides sufficient facts to overcome Defendants' motions to dismiss. He disputes Defendants' position that, in the absence of an IBS diagnosis, his illness does not qualify as a serious medical condition. ECF No. 17, pp. 8-9; ECF No. 22, p. 3. With the complaint outlining that Pohlmann suffered severe pain for months and severe bouts of diarrhea, along with anxiety and humiliation out "of fear of

defecating on himself in front of others," he sufficiently alleged that he "has a serious medical need that is easily discernible and one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." ECF No. 17, p. 9; ECF No. 22, p. 6. Pohlmann argues "Defendants failed to adequately treat his issues for 14 months and then adamantly refused to treat [his] severe pain and unexpected diarrhea since . . . March 9, 2022." ECF No. 17, p. 10; ECF No. 22, p. 7. Pohlmann's condition was serious enough to be prescribed "chronic clinic" treatment before September 14, but he never received it. ECF No. 17, p. 10; ECF No. 22, p. 8.

Pohlman included numerous exhibits with his response to Noles and Varona's motion to dismiss. ECF No. 17, pp. 23-69. These exhibits include his grievances for care and medication to control his symptoms in March 2022, April 2022, May 2022, and June 2022; grievances about his medical condition and inquiring into whether he has severe IBS or Crohn's disease; grievances in 2021 and 2022 alleging the denial of treatment and medication; grievances outlining the level of interference on daily activities caused by his condition (e.g. missing "head counts" because he is in the bathroom due to bouts of diarrhea, soiling his pants when he is denied access to a restroom); and grievances addressing the failure to schedule Pohlmann for the chronic clinics. Id.

The greatest hurdle for all Defendants, here, is that they provide absolutely no exhibits in support of their arguments or in contradiction to Pohlmann's allegations. At this stage of litigation, the Court must construe the amended complaint in the light most favorable to Pohlmann and accept his factual allegations therein as true. Brooks, 116 F.3d at 1369.

B. Failure to Exhaust

Noles and Varona assert Pohlmann failed to exhaust his administrative remedies. ECF No. 11, p. 1. The PLRA requires a prisoner to exhaust his administrative remedies before filing a civil rights action. 42 U.S.C. § 1997(e); Porter v. Nussle, 534 U.S. 516, 524 (2002); Gould v. Owens, 383 F. App'x 863 (11th Cir. 2010). There is no discretion to waive this requirement. Id. The PLRA requires proper exhaustion in compliance with the procedural rules and deadlines of an institution's grievance system. Woodford v. Ngo, 548 U.S. 81, 89-91 (2006). The exhaustion requirement "reduces the quantity and improve[s] the quality of prisoner suits" and affords prison officials the opportunity to address complaints internally before a Section 1983 case is filed. Porter, 534 U.S. at 525. This includes filling an appeal, even if it would be futile. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in

abatement." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." Id. It is "not generally an adjudication on the merits." Id.

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. (citing Bryant, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373-74, 1376). However, defendants have the burden of proof to show a plaintiff failed to exhaust his administrative remedies. Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

Noles and Varona submit one line about exhaustion without any supporting facts: "Plaintiff has failed to exhaust his administrative remedies." ECF No. 11, p. 1. This is insufficient. They cannot shift the burden of proof onto Pohlmann to support their exhaustion defense. Because Noles and Varona did not provide evidence to support their contention that Pohlmann failed to exhaust all potential administrative remedies, their argument easily fails. See Jones, 549 U.S. at 212 ("A prisoner plaintiff does not need to demonstrate exhaustion in their complaint . . .").

C. Deliberate Indifference to a Serious Medical Need

There is an "obligation to provide medical care for those who are incarcerated whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). Delayed or denied access to medical care for inmates resulting in physical or mental injury constitutes a violation of constitutional rights. Id. To sufficiently state a claim, a plaintiff must allege facts that plausibly show: (1) the plaintiff had a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) there is a causal connection between that indifference and the plaintiff's injury. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). The medical need must be "one that, if left unattended, pos[es] a substantial risk of serious harm." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations and internal

quotation marks omitted). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" McElligott v. Foley, 182 F. 3d 1248, 1254 (11th Cir. 1999).

A deliberate-indifference claim contains an objective and a subjective component. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). First, the prisoner must prove the need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," which "if left unattended, poses a substantial risk of serious harm." Id.

Second, the prisoner must prove the defendant had (1) subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) by conduct that is more than mere negligence. Id. citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence is insufficient to support a claim. Farmer, 511 U.S. at 835-36. As a result, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim

of cruel and unusual punishment. See Estelle, 429 U.S. at 106. "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Estelle, 429 U.S. at 105-06. See also Wilson, 501 U.S. at 297-98.

The Eleventh Circuit instructs that, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Farrow v. West, 320 F.3d 1235 (11th Cir. 2003) citing Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th Cir. 1997). The "deliberate indifference" standard may be met in instances where a prisoner is subjected to repeated examples of delayed, denied, or grossly incompetent or inadequate medical care; prison personnel fail to respond to a known medical problem; or prison doctors take the easier and less efficacious route in treating an inmate. See, e.g., Harris v. Coweta Cty., 21 F.3d 388, 393-94 (11th Cir. 1994) (indicating prison officials may nonetheless act with deliberate indifference for delaying treatment beyond a tolerable point); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating failure to respond to known medical problems or to take a less efficacious course of treatment can amount to deliberate indifference).

Allegations that raise only claims of mere negligence, neglect, or medical malpractice are insufficient to recover under § 1983 simply because the patient is a prisoner. Estelle, 429 U.S. at 105-07. When the medical care "is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" or is "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care," it violates the Eighth Amendment. Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1983).

"[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment (fails to) support a claim of cruel and unusual punishment." Keohane v. Fla. Dep't of Corr., Sec'y, 952 F.3d 1257, 1266 (11th Cir. 2020) citing Harris v. Thigpen, 941 F.2d 1495,1510 (11th Cir. 1991). As articulated in Estelle, "whether . . . additional diagnostic techniques or forms of treatment - is indicated is a classic example of a matter for medical judgment" and "[a] medical decision not to order" additional testing, "does not represent cruel and unusual punishment." 429 U.S. at 107.

Viewing the factual allegations in the light most favorable to Pohlmman and accepting those allegations as true, Pohlmann has sufficiently alleged that he has a serious medical condition, which left untreated poses a

substantial risk of harm. In his amended complaint, Pohlmann alleged that for over two years he suffered from severe abdominal pain and uncontrollable diarrhea; his condition continues to worsen. ECF No. 5, p. 5. Pohlmann admitted that certain diagnostic testing was completed; and he received some medical treatment and was told that he was referred for "chronic clinic" care. Id., pp. 8-9. However, Pohlmann does not only challenge the adequacy of the treatment; he maintains that after the lab work returned "negative" results, his condition was ignored despite the continued symptoms. Id., pp. 9, 12. 16-18. Pohlmann alleged he received absolutely no treatment, at least from September 2022 until the time he filed his amended complaint. Still, as of the time Pohlman filed his response to the instant motions to dismiss, he has not been scheduled for a single "chronic clinic" visit or evaluation and was not provided any medication to treat his symptoms.

None of the defendants provided any exhibits to contradict any of Pohlmann's factual assertions. There are no medical records for the Court to consider. The fact that Pohlmann does not have a diagnosis for IBS or any other condition is not fatal to his case at this stage. Pohlmann's notices and grievances he filed in support of his response show that Defendants knew Pohlmann had a serious medical condition. ECF No. 17, pp. 23-69. The

factual allegations in Pohlmann's complaint are sufficient to overcome the unsupported motions to dismiss. Accordingly, the Eighth Amendment claims against Defendants should proceed.

D. Punitive Damages Claims Proceed

Defendants Noles and Varona argue that Pohlmann's claim for punitive damages should be stricken because Pohlmann did not allege the requisite intent to establish deliberate indifference. ECF No. 11, p. 8. As stated above, because the Eighth Amendment claims should proceed at this stage, the punitive damage claims also survive.

E. Injunctive Relief Claims Should be Denied

Defendants Hill and Bearden argue that the injunctive relief claims should be dismissed because Pohlmann cannot establish his constitutional rights were violated and because he fails to specify the specific injunctive relief he is requesting. ECF No. 20, p. 6.

In order for Pohlmann to be entitled to a preliminary injunction, he must show: (1) a substantial likelihood of success on the merits; (2) that the order is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm that the order would cause to the non-movant; and (4) that the order would not be adverse to the public interest. DeYoung v. Owens, 646 F.3d 1319, 1324 (11th Cir. 2011). A preliminary injunction is

considered an extraordinary and drastic remedy and, as such, is not granted unless Pohlmann can clearly satisfy the burden of persuasion as to each of the four prerequisites. Id. Granting or denying a temporary restraining order or preliminary injunction rests in the discretion of the district court. LSSi Data Corp. v. Comcast Phone, LLC, 696 F.3d 1114, 1119 (11th Cir. 2012).

The purpose of preliminary injunctive relief is to preserve the status quo between the parties and to prevent irreparable injury until the merits of the lawsuit can be reviewed. All Care Nursing Service v. Bethesda Memorial Hosp., 887 F.2d 1535, 1537 (11th Cir. 1989). Therefore, the relief sought in the motion must be closely related to the conduct. The persons from whom the injunctive relief is sought must be a party to the underlying action. See In re Infant Formula Antitrust Litig., MDL 878 v. Abbott Laboratories, 72 F.3d 842 (11th Cir. 1995). A showing of irreparable harm is "the sine qua non of injunctive relief." Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Amer. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990).

Pohlmann has the burden to satisfy each of the four criteria. In his complaint, Pohlmann did not indicate what type of injunctive relief he seeks. Nor did Pohlmann provide any argument as to why he believes he has a substantial likelihood of success on the merits. If Pohlmann was relying on his complaint surviving past the motion to dismiss stage, this is misplaced.

The Court may find that the Eighth Amendment claims proceed in this case but that does not mean it will infer a substantial likelihood of success on the merits of the claim. This is particularly so where no party provided any medical records for the Court's consideration.

Similarly, Pohlmann does not argue that he will suffer irreparable harm if he does not receive injunctive relief. The irreparable injury "must be neither remote nor speculative, but actual and imminent." Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Amer., 896 F. 2d at 1285 (11th Cir. 1990) (quotations and citations omitted). Without any argument, Pohlmann fails to meet his burden for injunctive relief; therefore, his request should be denied.

## VI. Conclusion and Recommendation

The Clerk is **DIRECTED** to correct the docket so that it reflects the full names of Defendants Hill and Bearden.

It is respectfully **RECOMMENDED** that:

1. The motion to dismiss filed by Defendants Noles and Varona, ECF No. 11, should be **DENIED**, in part, and **GRANTED** in part.

2. The motion to dismiss filed by Defendants Hill and Bearden, ECF No. 20, should be **DENIED**, in part, and **GRANTED**, in part.

3. The Eighth Amendment claims against all Defendants, in their individual- and official capacities should **PROCEED**.

4.  The claims for monetary damages including punitive damages should **PROCEED**.

5.  The claim for injunctive relief should be **DENIED**.

IN CHAMBERS at Tallahassee, Florida, on January 4, 2024.

**s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).